## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | | **3:15-CR-72** |
| | **:** | |
| **v.** | | |
| | **:** | **(JUDGE MANNION)** |
| **MICHAEL COSTELLO,** | **:** | |
| **Defendant** | **:** | |

## MEMORANDUM

## I.    BACKGROUND[1]

On April 23, 2020, defendant Michael Costello, an inmate at FCI-Sandstone, Minnesota, filed, *pro se*, his first Motion for Compassionate Release or Reduction of Sentence under 18 U.S.C. §3582(c)(1)(A), as amended by the First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), and request for immediate transfer to home confinement, related to his 144-month prison sentence, due to the COVID-19 pandemic. (Doc. 93). Defendant sought the court to alter his sentence and to immediately release him from confinement in prison at FCI-Sandstone to home confinement in Scranton, Lackawanna County, Pennsylvania, due to his fear that he may contract the COVID-19 virus in the prison if it was

---

[1]The court does not repeat the complete background of this case since it was stated in its May 11, 2020 Memorandum dismissing without prejudice defendant's first motion for compassionate release. (Doc. 94).

1

introduced there in the future. He did not allege that he has any chronic medical condition that would put him at greater risk to suffer more severe consequences if he did contract the virus. The court also noted that defendant was 45 years old and not in the high risk age category.

On May 11, 2020, the court issued a Memorandum and construed defendant's motion as a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241, and it transferred his case to the District of Minnesota, where habeas jurisdiction was proper. (Doc. 94).

Alternatively, the court construed defendant's filing as a motion for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i), and it *sua sponte* dismissed the motion without prejudice for lack of jurisdiction due to his failure to exhaust his BOP administrative remedies.

Further, to the extent defendant was deemed as seeking the court to order the BOP to find him eligible for immediate home confinement designation under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, §12003, the court denied this request since it did not have authority under this Act to order the BOP to release him to home confinement.

On June 22, 2020, defendant filed, *pro se*, his second motion for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i), alleging that he has now exhausted his BOP administrative remedies and that his motion is properly before the court. (Doc. 96). Defendant seeks the court to release him to home confinement or to re-sentence him to time served. Defendant

2

attached Exhibits to his motion, including copies of his requests for compassionate release and the responses from Warden Fikes. (Doc. 96 at 7-11). Defendant also submitted copies of his BOP medical records. (Doc. 96 at 12-25).

Specifically, as to his utilization of the administrative remedy process, defendant submitted a copy of his May 1, 2020 Inmate Request to Staff for compassionate release, under 18 U.S.C. §3582(c)(1)(A)(i), alleging extraordinary and compelling circumstances due to the COVID-19 pandemic and his medical conditions of high blood pressure, gout, high cholesterol, and an ankle injury requiring surgery, as well as his family history of heart disease and cancer. On May 5, 2020, Warden Fikes denied defendant's request stating that his "concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from his sentence." (Doc. 96 at 7-8).

On May 20, 2020, defendant filed a request for reconsideration (an appeal) with the Warden regarding the denial of his request for compassionate release. On May 27, 2020, Warden Fikes denied defendant's request and advised him that he could appeal the response by filing a "Regional Appeal *via* Form BP-230(13), to the [BOP] Regional Director" within 20 days. (Doc. 96 at 9-10).

On June 11, 2020, defendant submitted his appeal of the Warden's May 5, 2020 and May 27, 2020 responses to his requests for compassionate release to the BOP Regional Director on a Form BP-10. (Doc. 96 at 11).

3

In his instant motion, defendant indicates that his recent appeal of the Warden's responses is still pending with the Regional Director. Defendant contends that this shows he exhausted his administrative remedies. Defendant also states that he believes the court now has jurisdiction to decide his motion under 18 U.S.C. §3582(c)(1)(A)(i) "as 30 days have expired since [his] original request was received and denied by the Warden." (Doc. 96 at 1-2).

The court directed the government to respond to defendant's second motion. On July 20, 2020, the government filed its brief in opposition to the motion and copies of defendant's BOP medical records, which the court allowed to be filed under seal. (Docs. 100 & 102).

On August 3, 2020, defendant filed his reply brief with attached Exhibits, including copies of his medical records, courses he completed in prison, including an apprenticeship, and certificates of achievements. (Docs. 104 & 104-1). On August 10, 2020, defendant filed a supplement alleging that a staff member tested positive for COVID-19, (Doc. 105), and on September 9, 2020, he filed an addendum, (Doc. 106), stating that over 35 days have lapsed since he submitted his appeal to the BOP (BP-11) regarding his request for compassionate release and stating that he did not receive a response. As such, defendant indicates that he has fully exhausted the administrative process.

4

## II.    DISCUSSION[2]

The government does not dispute that the exhaustion requirement has been satisfied in this case with respect to defendant's second motion for compassionate release. Since Costello has exhausted his BOP administrative remedies, the court will consider the merits of his instant motion for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i).

"The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute." United States v. Schultz, —— F.Supp.3d ——, 2020 WL 1872352, at *2 (W.D. N.Y. April 15, 2020) (citation omitted). "A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions." Id. (citations omitted).

Costello argues that "[his] serious medical vulnerabilities, combined with the BOP's catastrophic response to the COVID-19 pandemic, constitute 'extraordinary and compelling reasons'' warranting his reduction in his sentence and release from prison. He also contends that he is not a danger

---

[2] As previously noted, defendant is currently serving a 144-month prison sentence that was imposed by this court on October 25, 2017, after he pled guilty to receipt and distribution of child pornography, 18 U.S.C. §2252(a)(2). Defendant was also ordered to be on 10-years of supervised release following the service of his prison sentence.

to the public and that a reduction in his sentence is supported by the factors in §3553(a).

The government contends that defendant's motion should be denied since he has not identified "extraordinary and compelling reasons" for a reduction within the meaning of §3582(c)(1)(A) and the Sentencing Commission's policy statement, and since he poses a significant danger to the public and the statutory sentencing factors under §3553(a) do not weigh in favor of his release.

As the court in United States v. Epstein, 2020 WL 2537648, *2 (D.N.J. May 19, 2020), explained:

> Once a federally imposed sentence commences, a district court has limited authority to modify that sentence. Dillon v. United States, 560 U.S. 817, 825 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." (alterations in original) (quoting 18 U.S.C. §3582(b)). One such authority for modifying a sentence is found in the recently-enacted First Step Act, which allows a defendant to be afforded compassionate release for "extraordinary and compelling reasons." 18 U.S.C. §3582(c)(1)(A)(i).

The First Step Act, §3582(c)(1)(A)(i), provides in relevant part:

(c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons,

or upon motion of the defendant after the defendant has fully

6

exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the facts set forth in section 3553(a) to the extent that they are applicable, if it finds that –

(i) extraordinary and compelling reasons warrant such a reduction.

Thus, "a defendant seeking a reduction in his sentence under the First Step Act ["FSA"] 'bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release.'" *Id.* (citation omitted).

The government states that the Sentencing Commission's "policy statement defines 'extraordinary and compelling reasons' to include, …, certain specified categories of medical conditions." (Doc. 100 at 19) (citing USSG §1B1.13, cmt. n.1(A)). However, as the court in Epstein, *id.* at *3, pointed out, "the Sentencing Commission had defined th[e] term ["compelling and extraordinary reasons"] as it relates to the BOP's discretion under the previous version of section 3582(c)(1)(A), it has not, however, updated its Policy Statement since the passage of the First Step Act." (citing United

7

States v. Rodriquez, 451 F.Supp.3d 392, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020); *see also* U.S. Sentencing Guidelines Manual ("U.S.S.G."), §1B1.3, Application Note 1 (U.S. Sentencing Comm'n 2018)). In any event, "the Policy Statement provides useful guidance for district courts in assessing a defendant's eligibility for compassionate release, but it 'does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under §3852(c)(1)(A).'" *Id.* (citation omitted). "The Policy Statement provides that a defendant may show extraordinary and compelling reasons for compassionate release based on the medical condition of the defendant, the age of the defendant, the defendant's family circumstances, or for "other reasons." *Id.* (citing U.S.S.G. §1B1.13, Application Note 1).

In the instant case, as in Epstein, *id.* at *3, defendant Costello seeks compassionate release based on his medical conditions, as such, he "may show extraordinary and compelling reasons for release … where (1) '[t]he defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory),' or (2) he or she is[:] (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because that of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." (citation omitted).

The court first addresses whether defendant has demonstrated extraordinary and compelling reasons for compassionate release, under the FSA, based on his medical conditions.

"Section 3582(c)(1)(A)(i) permits a federal prisoner to petition a court for compassionate release for 'extraordinary and compelling reasons'", and in general, "'extraordinary' means '[b]eyond what is usual, customary, regular, or common' and a 'compelling need' is a 'need so great that irreparable harm or injustice would result if it is not met.'" United States v. Ramirez-Ortega, 2020 WL 485356, *3 (E.D. Pa. Aug. 18, 2020) (citations omitted). Although a "general fear of contracting COVID-19 while imprisoned at [the federal prison] does not represent an extraordinary and compelling reason warranting compassionate release", id., if an inmate has recognized medical conditions that would put him at a greater risk to suffer severe complications if he did contract COVID-19, this may qualify as an "extraordinary or compelling reason" warranting his release from prison. *See* "People Who Are at Higher Risk for Severe Illness," https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/people-at-higher-risk.html.

Defendant, age 46, alleges that he suffers from hypertension, gout, an ankle injury and a family history of heart problems and cancer. Defendant has heartburn but its treated effectively with Omeprazole. He also alleges that he has a leaky heart valve. He claims that his medical conditions make him more susceptible to severe complications if he contracts COVID-19. The

9

government concedes that defendant suffers from obesity above BMI 30, "which the CDC has described as a serious risk factor in the context of the COVID-19 pandemic", and hypertension but it points out that his hypertension is "stable and being treated successfully." It also contends that there is nothing in defendant's medical records to indicate he has a leaky heart valve. Nor does the court find any indication in defendant's medical records, that were submitted, to show that he has a leaky heart valve. The government also states that "[i]f a defendant's medical condition does not fall within one of the categories specified in the application note (and no other part of the application note applies), his or her motion must be denied", and it contends that "the defendant has no serious physical or medical condition that constitutes a compelling reason for release." (Doc. 100 at 20).

Also, the PSR indicated that Costello was treated for hypertension since 2010, and that he was not taking medication for this condition but he was prescribed Allopurinol for gout in his right ankle and knee. (Doc. 81 at 10). The prison medical staff also prescribed Allopurinol for defendant's gout and reported that defendant has been taking his medication as directed for all of his conditions, that he was losing weight and indicated that he "feels well." Defendant was also being treated by the prison for his arthritis in his right ankle, and he was prescribed Naproxen. Defendant's heart rate was reported to be "regular" and "normal." Defendant also denied any medical history regarding cardiovascular issues.

No doubt that defendant suffers from obesity and hypertension that may make him more susceptible to, and place him in greater danger if he contracts COVID-19. However, the prison is effectively treating defendant for these medical conditions. (*See* Docs. 102 & 102-1 & 104-1).

The government, (Id. at 21-22),  also states that while COVID-19 does not constitute an extraordinary and compelling reason,

> [t]hat does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under §3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, [footnote omitted] that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. USSG §1B1.13, cmt. n.1(A)(ii)(I). But as part of its analysis of the totality of circumstances, the Court should consider whether the inmate is more likely to contract COVID-19 if he or she is released than if he or she remains incarcerated. That will typically depend on the inmate's proposed release plans and whether a known outbreak has occurred at his or her institution.

The court notes that in Lackawanna County, where defendant wishes to be placed on home confinement, as of October 15, 2020, there were 3,065 COVID-19 cases reported and 217 deaths. *See* https://www.health.pa.gov/topics/disease/coronavirus/Pages/Cases.aspx

Also, the number of COVID-19 cases in a federal prison can be found at COVID-19 Cases, Federal Bureau of Prisons,

11

https://www.bop.gov/coronavirus/. At FCI Sandstone, there are currently 65 inmate positive cases of COVID-19 reported and no positive cases for staff. Also, 116 inmates have recovered from the virus at the prison. There are no reported deaths from COVID-19 among inmates and staff at the prison.

Moreover, defendant's chronic care medical records indicate that he is being properly treated for his obesity and hypertension, as well as his other conditions, at FCI Sandstone, (*see* Doc. 102 & Doc. 102-1 & 104-1), and that his conditions are controlled by medications and stable. Additionally, the BOP's Medical Duty Status indicates that defendant had no work restrictions and that he was provided a brace for his ankle.

Additionally, defendant does not allege that he was exposed to the COVID-19 virus at FCI Sandstone, nor has he controverted with any evidence the substantial steps identified in the government's brief that the BOP is taking to protect the health and safety of both inmates and staff at the prison. Since the safety procedures and protocols enacted by the BOP in prisons to protect inmates and staff, including at FCI Sandstone, are stated in the government's brief, (Doc. 100 at 3-14), and are found in the BOP's websites cited in the brief, they are not repeated herein. *See* BOP website at: www.bop.gov/coronavirus/index.jsp.

As the court in Epstein, 2020 WL 2537648, at *6, concluded, "[m]ere 'speculation concerning possible future conditions does not constitute a 'compelling reason' for release." (citing United States v. Veras, 2020 WL 1675975, at *4 (M.D. Pa. Apr. 6, 2020); *see also* Raia, 954 F.3d at 597

("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

To the extent that Costello's medical conditions, and the risks he faces due to the COVID-19 pandemic, constitute "extraordinary and compelling reasons", the court will consider his compassionate release based on weighing the applicable factors set forth in 18 U.S.C. §3553(a).

Under the FSA, the court is also required to consider "the factors set forth in section 3553(a) to the extent that they are applicable" *Id.* at *3 (citing §3582(c)(1)(A)). As in Epstein, *id.*, the following factors in §3553(a)(1) and (2), apply to the present case:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct.

The undisputed factual background of defendant's offense is detailed in the government's brief, (Doc. 100 at 26-27), as well as in the PSR, (Doc. 81 at 4-6). In particular, as the government, in part, summarizes:

> [Costello] pleaded guilty to the receipt and distribution of child pornography. His offense involved victim-children under the age of 12 and included images of sadistic and masochistic and violent conduct.

The number of images received/distributed was 27,350. He distributed such images to others during an 11-month time period. He actively sought out "pthc" (preteen hard core) images, and several images involved the sexual abuse of infants and toddlers. Examples of titles of videos/images found on the defendant's computer include: "fuck 03yo boy," "7yo stephy Hard Sex," "2yo +mom+dad."

The court does not repeat the "sordid and horrific images/videos found on Costello's computer" which are detailed in the government's brief. (Doc. 100 at 26-27).

Suffice to say that the court finds that the underlying conduct of Costello's instant offense, which constitutes disturbing criminal conduct involving graphic child pornography, is very severe and clearly demonstrates that he poses a danger to the community. Costello's conduct endangered the vulnerable minors as well as the safety of the community. As the government concludes in its brief, (Doc. 100 at 27), "[Costello's conduct was] extremely harmful and dangerous", and [he] demonstrated through his conduct that he is sexually attracted to young children." As such, [Costello], who has only served approximately 21% of his sentence, would be a danger to the community if he were to be released."

Costello has failed to establish that he is not a danger to the community. USSG §1B1.13(2). In fact, as the government recounts, (Id. at 27), in its brief:

[Costello] only stopped [viewing and distributing child pornography] after a search warrant was executed at his residence and agents informed him that he had distributed images of child pornography to an undercover FBI agent in August 2014. In his confession to agents,

14

which he made a few days before trial was scheduled to begin, Costello admitted that he became sexually aroused when he viewed images of child pornography. He also stated that he viewed child pornography once or twice per week during this 11-month time period.

Thus, the court finds that Costello committed a very serious crime involving vulnerable minors, and that he presents a danger to the community.

The court acknowledges the courses and apprenticeships Costello has taken in prison as well as the Certificates of Appreciation he has earned, however, his service of only 23 months towards his 144-month sentence in this case, to be followed by a 10-years supervised release, is not sufficient time to reflect the seriousness of his offense and is inconsistent with the §3553(a) factors. *See* United States v. Pawlowski, 967 F.3d 327, 330-31 (3d Cir. 2020) (Third Circuit held that a district court did not abuse its discretion in denying compassionate release based, in part, on the amount of time remaining to be served in the inmate's sentence.). In particular, the court finds that "the need for [Costello] to serve the remainder of his sentence still exists to 'reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense'", and thus, "the section 3553(a) factors weigh against [his] release to home confinement." Epstein, 2020 WL 2537648, at *3 (citing §3553(a)).

Moreover, the 144-month sentence imposed by the court on Costello was a significant downward departure from his guidelines range. Based upon a total offense level of 37 and a criminal history category of I, Costello's guideline imprisonment range was 210 to 240 months. (Doc. 81 at 14). *See*

15

Pawlowski, 967 F3d at 331 (Court stated that since defendant's "sentence was within the applicable Sentencing Guidelines range [it] is presumptively reasonable.") (citation omitted).

## III.   CONCLUSION

Defendant Costello's second Motion for Compassionate Release and for Immediate Release to Home Confinement, under §3582(c)(1)(A)(i), related to the COVID-19 pandemic and his medical conditions, **(Doc. 96)**, will be **DENIED ON ITS MERITS**. An appropriate order will follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: October 16, 2020**
15-72-02

16